222 So.2d 93 (1969)
J. M. BROWN CONSTRUCTION COMPANY, Inc.
v.
D & M MECHANICAL CONTRACTORS, INC., et al.
No. 7651.
Court of Appeal of Louisiana, First Circuit.
April 14, 1969.
*94 Carey J. Guglielmo and Carlos G. Spaht, of Kantrow, Spaht, Weaver & Walter, Baton Rouge, Felix H. Savoie, Jr., of Simmons & Savoie, Napoleonville, for third-party defendant-appellant.
Timothy J. McNamara, of Davidson, Meaux, Onebane & Donohoe, Lafayette, for third-party defendants-appellees.
Before LANDRY, SARTAIN and MARCUS, JJ.
LANDRY, Judge.
This appeal concerns the scope and extent of coverage afforded under an "errors and omissions" policy of insurance issued to Delchamps Insurance Agency (Delchamps), defendant and third party plaintiff herein, by Delchamps' insurer and codefendant, Agrippina Versicherungs-Aktiengesellschaft (Agrippina), a foreign surplus underwriter. The trial court sustained Agrippina's exception of no cause of action and motion for summary judgment on the finding the error for which Delchamps is sought to be held was not covered by the policy in question. Plaintiff J. M. Brown Construction Company, Inc. (Brown) has appealed the judgment of the lower court rejecting his principal demand against Agrippina and Delchamps has also appealed the dismissal of his third party action against said same defendant. We find the trial court has correctly resolved the question of coverage and affirm his decision in the matter.
The pertinent facts and circumstances are virtually without dispute herein. Brown was prime contractor for construction of a dormitory facility on the campus of Southeastern Louisiana College, Hammond, Louisiana. A portion of the work was subcontracted by Brown to D & M Mechanical Contractors (D & M), who were obligated to furnish a performance bond. D & M applied to Delchamps for a surety bond which was furnished, the surety thereon being Commonwealth Marine and General Assurance Company Ltd. Subsequently D & M defaulted on its sub-contract and it thereupon became known its aforenamed surety was insolvent. Consequently, Brown incurred considerable loss in making good the obligations of D & M under the subcontract. Brown then instituted suit against D & M, Delchamps and Phoenix Insurance Company, allegedly an errors and omissions insurer of Delchamps. By supplemental petition, Agrippina was also impleaded as Delchamps' insurer.
It is conceded the effective dates of Agrippina's policy were March 6, 1964, through March 6, 1965, and the alleged error of Delchamps in placing the D & M performance bond with an insolvent surety occurred during said policy period. Also acknowledged is the fact that the claim against Delchamps for failure to obtain a solvent surety was made in May, 1966, and Delchamps did not call upon Agrippina for indemnification until May 30, 1967.
The question before us, therefore, is one of law only. Simply put, the issue is whether the professional liability policy issued by Agrippina to Delchamps provided coverage for an error committed by the insured during the term of the policy, where claim was not made thereon until after policy *95 expiration and notice of the claim was not given the insurer until approximately 26 months subsequent to the last effective policy date.
Appellants contend the policy should be construed to apply to any breach of professional responsibility by Delchamps committed within the policy period, irrespective of when Agrippina might subsequently be called upon to make indemnification on behalf of its insured. Agrippina, however, insists its coverage plainly states its responsibility only for such claims as they receive notice of during the policy dates, regardless of when the claim originated. A single exception is acknowledged by Agrippina, namely, potential claims of which it is notified during the life of the policy, notwithstanding actual claim might be made thereon following expiration of the contract.
It appears, therefore, that in large measure the outcome of this matter depends upon whether the policy in question is a "discovery policy" or an "occurrence policy". The former is one wherein coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy period. The latter is a policy in which the coverage is effective if the negligent or omitted act occurs within the policy period, regardless of the date of discovery. Samuel N. Zarpas, Inc. v. Daniel J. Morrow et al., D.C., 215 F.Supp. 887. See also Taylor Contracting and Supply Company v. American Mutual Liability Insurance Company, 163 So. 2d 450.
The policy in question appears of record. It consists of six pages purporting to be a standard form adaptable to different types of coverage. The first page is entitled "Companies Collective Policy" indicating, among other things, that the several insurers bound are obligated each for the portion assumed as subsequently set forth. Page 2 indicates Agrippina's assumption for total responsibility under the policy. Page 3 consists of a division into five paragraphs providing space for notation in each instance of the following vital information: (1) Policy Number; (2) Name and address of the insured; (3) Amount of premium; (4) Policy dates, and (5) The risk and sum insured. Page 4 is entitled in large black letters "INSURANCE BROKERS AND AGENTS ERRORS AND OMISSIONS INSURANCE". Centered on Page 4, approximately one-third distance from the top is to be found the word "CONDITIONS", underscored and printed in type larger than the general content of that page. The remainder of Page 4 and all of Page 5 in small type sets forth certain detailed aspects of the policy provisions. Page 6 is simply a table showing the percentage of premium returnable upon short rate cancellation at the request of the named insured. Paragraph 5 on Page 3 contains, inter alia, the following pertinent provision: "The Risk and Sum Insured hereunder are ERRORS AND OMISSIONSas per wording attached which is to be taken and read as forming part of this policy."
On the first or title page of the policy we note the following language:
"The insurers hereby severally agree each for the proportion set against its name to pay or make good to the Assured or the Assured's Executors, Administrators and Assigns all such loss, damage or liability as set forth herein that the Assured may sustain during the period of insurance stated in the said Schedule or during any subsequent period as may be mutually agreed between the Assured and the Insurers; payment to be made within Seven Days after such loss, damage or liability is proved." Unquestionably Page 4 (entitled as hereinabove shown) together with Page 5 constitute the general insuring agreement.
Preceding the CONDITIONS contained in Paragraphs numbered 1 through 10, inclusive, appearing on Pages 4 and 5, is found the following coverage provision:
"NOW THEREFORE this Insurance, subject to the terms and conditions hereof, *96 indemnifies the Assured against any claim or claims for breach of duty as Insurance Brokers, Insurance Agents or General Insurance Agents which may be made against them during the period stated in the said Schedule by reason of any negligent act, error or omission, whenever or wherever committed or alleged to have been committed, on the part of the Assured or any person who has been, is now, or may hereafter during the subsistence of this Insurance be employed by the Assured, in the conduct of any business conducted by or on behalf of the Assured in their capacity as Insurance Brokers, Insurance Agents or General Insurance Agents."
Also appropos this discussion is Paragraph Number 6 of the specified CONDITIONS which appears on Page 4 and is quoted in full as follows:
6. (1) The Assured shall as a condition precedent to their right to be indemnified under this Insurance give to the Underwriters immediate notice in writing.
(a) of any claim made against them or
(b) of the receipt of notice from any person of an intention to hold the Assured responsible for the results of any breach of duty as Insurance Brokers, Insurance Agents or General Insurance Agents,
and shall in either case, upon request, give to the Underwriters such information as the Underwriters may reasonably require.
(2) If during the subsistence hereof the Assured shall become aware of any occurrence which may subsequently give rise to a claim against them by reason of any negligent act, error or omission and shall during the subsistence hereof give written notice to the Underwriters of such occurrence, any claim which may subsequently be made against the Assured arising out of that negligent act, error or omission shall be deemed for the purposes of this Insurance to have been made during the subsistence hereof."
In substance appellants contend (1) the policy in question expressly affords coverage under the circumstances; (2) alternatively, the policy is ambiguous consequently under the well established jurisprudence such doubt must be resolved in favor of the insured and coverage afforded; and (3) summary judgment does not lie inasmuch as there is dispute as to material facts.
In support of their primary argument that the policy expressly extends coverage herein, appellants depend upon the hereinabove quoted provision appearing upon the policy face. Relying thereon, appellants maintain the protection therein afforded against "all such loss, damage or liability as set forth herein that the Assured may sustain during the period of insurance * * *." is plain and explicit. They further contend it does not require that a claim be made within the policy period for coverage to obtain. On this basis they aver the loss occurs upon the happening of the event which gives rise thereto which, in this instance, is the placing of the D & M bond with an allegedly insolvent insurer. Therefore, according to appellants, since this event transpired during the policy period, it fixed Agrippina's liability which continued until claim was filed.
Appellant's alternative argument is based on the premise that the foregoing coverage expressly undertaken may not be modified by the cited "fine print" appearing on Page 5 of the policy. In this respect appellants maintain the alleged "fine print" renders the coverage vague, uncertain and ambiguous consequently all resultant incertitude must be resolved in favor of the insured. In so contending, appellants rely upon the principle that contracts of "adhesion", that is, agreements between parties *97 of disparate bargaining strength, are construed liberally in favor of the disadvantaged party. Additionally, appellants urge that in any event, ambiguities are resolved against the insurer under the firmly established jurisprudence.
In answer, Agrippina avers the provisions of the policy must be considered in their entirety and when so viewed the agreement evidences intent to protect the insured only against claims asserted within the policy period without regard to time of origin. Agrippina also contends there is nothing misleading, vague, ambiguous or uncertain about the cumulative meaning of the several provisions governing coverage. According to Agrippina, the face of the policy obligates the insurer to pay "all such loss, damage or liability as set forth herein that the Assured may sustain during the period of insurance. * * *" which alerts the insured to the fact that other provisions exist which relate to the coverage extended. Additionally, according to Agrippina, Paragraph 5 of Page 3 clearly informs the insured that the risk covered is Errors and Omissions as defined in attachments forming part of the policy; the attachments referred to being set forth on Page 5, the pertinent portions of which have been cited hereinabove. Specifically, Agrippina relies upon the provision that "* * * this insurance * * * indemnifies the Assured any claim or claims * * * which may be made against them during the period stated in the said Schedule. * * *" Lastly, Agrippina urges the provisions of Paragraph 6(2), supra, show positive intent to protect only against claims made during the policy period because said provision creates a single exception thereto, namely, claims of which the assured became aware would be honored after policy expiration provided written notice thereof is given the insurer during the policy term. Therefore, Agrippina contends, since no claim was filed against Delchamps during the policy period and no notice of any claim was given until 26 months following policy expiration, the trial court properly sustained its exception of no cause of action. In so arguing, appellee relies upon Home Insurance Company v. A. J. Warehouse, Inc., La.App., 210 So.2d 544, writs refused, 252 La. 840, 214 So.2d 162.
We find no merit in appellants' argument that the policy on its face shows coverage of the claim in question. The coverage provision on the face of the policy clearly states the obligation to pay all claims for loss, damage or liability AS SET FORTH HEREIN. (Emphasis by the Court). We believe this clear and forthright statement alerts the reader to further policy provisions to determine the extent of coverage. We believe that this provision, when read in conjunction with the remainder of the coverage clauses, refutes the contention Agrippina proposed to insure against all acts committed by the insured during the policy period.
We are in complete agreement with appellants' argument that any ambiguity in an insurance contract or policy must be construed in favor of the insured and against the insurer. Our law is well settled to that effect. See Albritton v. Fireman's Fund Insurance Company, 224 La. 522, 70 So.2d 111; Jones v. Standard Life and Accident Insurance Company, La.App., 115 So.2d 630.
However, we find no ambiguity, vagueness or inconsistency in the policy before us. As herein previously shown, the policy on its face indicates agreement to make good all loss as set forth therein. Unquestionably this apprises the reader that resort must be had to ensuing policy provisions to determine the precise coverage. One reading the document in question would next encounter Paragraph 5 on Page 3 which states the risk insured under the policy are errors and omissions as defined in an attachment which constitutes part of the policy. The "attachment", consisting of Pages 5 and 6, clearly entitled "INSURANCE BROKERS AND AGENTS ERRORS AND OMISSIONS INSURANCE" states in unmistakable language the extent *98 of coverage is restricted as contended by Agrippina. We find nothing ambiguous in the terminology. Neither do we find any inconsistency between the face provisions of the policy and those contained in the attachment consisting of Pages 5 and 6. Nor do we discern any merit in plaintiffs' argument that the broad coverage of all loss, damage or liability purportedly extended on the face of the policy is taken away by the "fine print" on Page 5. Said attachment, as already shown, clearly indicates in large, bold type that it pertains to an insurance brokers errors and omissions policy.
We find Kendrick v. Mason, 234 La. 271, 99 So.2d 108, cited by appellants, inapplicable to the case at hand. In the cited authority, exclusions were construed against the insurer because they were not stated with clearness and precision and therefore resulted in ambiguity with regard to the coverage limits. Such does not exist in the case at hand. Here the policy provisions clearly and expressly relate to each other in logical sequence, cumulatively defining the entire coverage spectrum.
As stated in Muse v. Metropolitan Life Insurance Company, 193 La. 605, 192 So. 72, 125 A.L.R. 1075, the rule of strict construction does not authorize perversion of language or the creation of ambiguity where none exists. Neither does it authorize the courts to make a new contract where the language employed clearly expresses the intent of the contracting parties.
Admittedly, Home Insurance Company v. A. J. Warehouse, Inc., La.App., 210 So.2d 544, is not directly in point inasmuch as the policy provision therein involved is not identical with that in the case at hand. We note, however, sufficient similarity with the case at bar to make the principle announced therein applicable to the instant matter. In the cited authority, one LeGardeur was sued for alleged faulty design of a warehouse floor causing the collapse of certain racks placed thereon. LeGardeur was insured under an errors and omissions policy issued by Fidelity and Casualty Company of New York for a three year period commencing May 4, 1960. Subsequently the insurer elected to discontinue all such policies and their brokers rewrote all such policies with other companies, LeGardeur's policy being assumed by Continental Casualty Company on April 1, 1962. Claim was brought after Continental's assumption of the risk but upon an incident which transpired while the Fidelity policy was in effect. The trial court absolved Fidelity of responsibility and cast Continental because of the failure of the insured to notify Fidelity of the claim during the period of Fidelity's policy. In so holding, the court concluded:
"To properly understand what prompted the trial judge's decision we must realize the peculiar nature of these professional liability insurance contracts. One of their main advantages to an insured is that they are retroactive in nature. Thus an insured is buying protection for any act, which might subject him to litigation, which he committed prior to the policy date as well as those acts committed during the policy term. The condition here is of course that the insured must not have had knowledge of such prior error, omission or act at the effective date of the policy. In this case we find that LeGardeur cannot succeed against Fidelity because he failed to notify Fidelity, during the term of that insurer's policy with him, of the act which would expose him to liability. The reason for this failure to notify Fidelity can only be that LeGardeur simply was unaware that the rack collapse was attributable to some error or fault on his part. In any event he failed to notify Fidelity and therefore Fidelity had no contractual liability to him." (Emphasis ours)
Our careful consideration of the terms of the policy in question convinces us beyond doubt that it is a discovery policy and not an occurrence policy.
Based on the assumption that the instant policy is an occurrence coverage meaning the loss or liability insured against attaches upon the happening of the event giving rise *99 thereto, appellants urge adoption of the jurisprudence established in Kendrick v. Mason, 234 La. 271, 99 So.2d 108; King v. Mason, 234 La. 299, 99 So.2d 117, and Taylor Contracting & Sup. Co. v. American Mutual Liability Insurance Co., 163 So.2d 450, all of which involve cases concerning property damage wherein loss was held to have occurred upon the happening of the event giving rise thereto and not when the loss was later discovered or became manifest. Appellants so argue on the basis of the policy face provision referring to all loss which might be sustained during the policy period. We are in agreement with the cited authorities insofar as they apply to the facts in the cases concerned. The principle therein announced, however, is without application herein considering the Agrippina policy clearly limits its scope to claims brought within the policy term.
On authority of Gray v. Zurich Insurance Company, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, and Atlantic National Insurance Company v. Armstrong 65 Cal.2d 100, 52 Cal.Rptr. 569, 416 P.2d 801, appellants urge our application of the doctrine of "adhesion". We are not cited any authority from our own jurisdiction regarding the principle of adhesion and our independent research has revealed none. Assuming arguendo, the merits of the rule, we find it to be of minimal assistance in solving the issue before us. We so conclude primarily because we detect no ambiguity or vagueness in the contract in question. Additionally, conceding an economic disparity between Delchamps and Agrippina, it still remains that Delchamps is itself an insurance broker presumably informed and knowledgeable in matters of insurance coverage. Since Delchamps was contracting for its own coverage in a field in which it may be assumed to possess expert knowledge and skill, we attach little weight, if any, to the principle of adhesion which it seeks to invoke herein.
There remains the contention that the trial court erroneously dismissed the action against Agrippina on motion for summary judgment. This contention is based on the claim that under the adhesion rule, Delchamps possessed "reasonable expectation" of coverage and was denied opportunity in the court below to show the facts and circumstances attending the issuance of the policy. It is urged Delchamps could establish it intended to obtain and thought it had secured an "occurrence" coverage instead of a "discovery" coverage.
It is significant that Agrippina excepted to the main and third party demands on the ground they stated no cause of action. No citation of authority is required in support of the principle that such an exception is triable on the face of plaintiff's petition and annexed documents. We note that the policy in question is attached to and made part of an amending and supplemental petition wherein plaintiff Brown impleaded Agrippina as a defendant on the strength of the attached policy. We also note that Delchamp's third party petition relies solely upon the policy which appears of record and which it is contended affords coverage under the circumstances. Delchamps' third party petition makes no reference to a different type of policy other than that sued upon. No alternative contention is made by either plaintiff in main demand or third party plaintiff that Delchamps intended to purchase a policy with terms different from that actually issued by Agrippina and made part of the pleadings herein. Under such circumstances, the merits of both demands must be determined solely in the light of the allegations in the petitions and the language contained in the annexed policy. The affidavit offered by Delchamps to the effect it intended to obtain a different type of coverage may not be considered in disposing of Agrippina's exception of no cause of action. Petitions thus attacked must stand or fall upon the allegations contained therein. They may not be subsequently supplemented by evidence or affidavit in such instances.
The judgment of the trial court does not reflect whether appellants' claims *100 were rejected upon Agrippina's exception of no cause of action, or on the merits under said defendant's motion for summary judgment. Under the circumstances it is immaterial on which basis the trial court rejected appellants' claims. If the trial court improperly granted Agrippina's motion for summary judgment, no injustice has resulted therefrom because the exception of no cause of action should have been sustained.
Accordingly, it is ordered, adjudged and decreed that the exception of no cause of action filed herein on behalf of defendant Agrippina Versicherungs-Aktiengesell-schaft and against plaintiff, J. M. Brown Construction Company, Inc., and third party plaintiff, Delchamps Insurance Agency, be and the same is hereby sustained and said plaintiff's and third party plaintiff's demands rejected and dismissed; all costs of these proceedings to be paid jointly by plaintiff, J. M. Brown Construction Company, Inc., and third party plaintiff, Delchamps Insurance Agency.
Amended and affirmed.