SARTAIN, Judge.
Before us is an appeal by J. C. Kerstens, d/b/a J. C. Kerstens & Associates (Ker-stens), whose third party demand against Continental Casualty Company (Continental), was dismissed by the district court on exceptions of no cause and no right of action and a motion for summary judgment.
This litigation was initiated as the result of the collapse of a part of the roof of the Livingston Parish School Board office and media center located in Livingston, Louisiana, on July 14, 1969. Kerstens, a civil engineer, and his firm were employed by the school board as design and building engineers on the project. He, his company, Continental Casualty Company, as his errors and omissions or professional liability insurer, and various other contractors, suppliers, and their insurance companies have been sued for damages by the school board as a result of this collapse.
*357 Continental subsequently filed a motion for summary judgment as to themselves in the suit initially filed herein which was sustained on the ground that the professional liability policy issued to Kerstens by that company had expired prior to the occurrence in question. That judgment was not appealed and is now final.
Shortly thereafter, Kerstens filed a third party action with which we are now concerned against Continental and certain other defendants, alleging, inter alia, that Continental’s policy was still in full force and effect as to this loss. To that petition Continental interposed exceptions of res judicata, no right and no cause of action, and a motion for summary judgment.
Again,- judgment was rendered for Continental as the motion for summary judgment and the exceptions of no right and no cause of action were sustained. Kerstens has appealed that action; we affirm the judgment of the district court and find that we are required to look no further than the motion for summary judgment in so doing.
In support of summary judgment, the moving party filed a certified copy of the Kerstens’ policy, an affidavit by an assistant vice-president of Continental Underwriters of Architects and Engineers Professional Liability Insurance, which included considerable correspondence from the insurer to the insured’s local broker concerning the expiration of Kerstens’ policy. Also filed in support thereof was an affidavit of the local agent who handled Kerstens’ policy and dealt directly with him along with copies of the various correspondence from the broker’s office to Kerstens concerning renewal and expiration of the policy. Additionally, a deposition of Kerstens was also incorporated as supportive of the motion. No counter affidavits were submitted on the part of the third party plaintiff.
Those documents reveal that the policy in question was written for a term of one year, commencing on July 11, 1968, and runing through July 11, 1969. Under Part I, Section IV, captioned “Policy Period, Territory” the contract includes these terms:
“(a) During the Policy Period
The insurance afforded by this policy applies to errors, omissions or negligent acts which occur within the United States of America, its territories or possessions, or Canada during this policy period if claim therefor is first made against the insured during this policy period.
(b) Prior to the policy period
The insurance afforded by this policy also applies to errors, omissions or negligent acts which occur within the United States of America, its territories or possessions, or Canada prior to the effective date of this policy if claim therefor is first made against the insured during this policy period and if all of the following requirements are present:
(1) the error, omission, or negligent act was also insured by this Company under the prior policy (as defined below) except that the period for making a claim against the insured under the prior policy (as defined below) has expired and
(2) no insured, at the effective date of the prior policy (as defined below), had any knowledge of a pending claim against any insured, had any knowledge of any claim which might be made against any insured or had any knowledge of any circumstance which may reasonably be expected to create a claim against any insured. . . . ”
(Emphasis ours)
The affidavits also establish that Continental originally insured Kerstens com *358 mencing on July 11, 1966, and during each year following through the term of the litigated policy. They show that considerable effort was expended prior to the expiration date of the policy in question to make Kerstens aware of the impending lapse of coverage and that the appropriate applications for renewal were never forwarded by the insured, nor was the required advance premium tendered or paid by him. In Kerstens’ deposition we note the following colloquy between the third party plaintiff and counsel for Continental:
“Q. Now, you stated, Mr. Kerstens, that you made application for insurance— for renewal of the insurance to be renewed each year, is that not correct?
A. Yes, sir. .
Q. Now, when you submitted this application to Allen — Hickman—Jones, which would then go to the company, now, you understood, did you not, that that was simply an application for insurance, similar to making application for life insurance?
A. That’s right.
Q. And until the company acted upon that application and either issued a policy to you or gave you written evidence that there was insurance in force, that your insurance was not renewed, isn’t that correct?
A. I imagine so. I—
* * . * * * *
Q. O.K. now, did you ever pay the premium for that renewal policy, that is, covering the period 7/11/69 to 7/11/70?
A. No.
% ‡ ‡ s)c ‡
Q. Let me ask you the question again, Mr. Kerstens, you said that you did not pay the premium for this period that I talked about; did you tender —I’ll ask you the question again— did you tender payment of the premium for Continental Casualty Company’s policy for the period 7/11/69 to 7/11/70?
A. No.

Q. As a matter of fact, besides the. fact that Mr. Allen sent you these three letters which we’ve marked for identification, he also called you on the telephone about the renewal of this policy, did he not?
A. I’m sure he did.
Q. And I presume that he told you that it was important that you renew it and you renew it timely.
A. That’s right.”
The appellant avers, however, that despite these indications that the policy lapsed on July 11, 1969, three days before the July 14th collapse of the roof, that a genuine issue of material fact still exists as to whether the policy was extended or renewed and further, they argue that the policy condition providing for coverage of claims reported within the policy period only is contrary to public policy. We find both arguments to be without merit.
As evidenced by the previously printed portions of Continental’s contract of insurance, the policy period insures errors, omissions or negligent acts which occur during the policy period, and under certain circumstances, those which occur prior to the policy period, and for which claim is made that period. There seems to be no dispute but that the loss involved herein occurred three days after the date on which this policy seemingly expired.
In J. M. Brown Const. Co. v. D & M Mechanical Contr., Inc., 222 So.2d 93 (La. App. 1st Cir.1969), this court considered *359 issues similar to those raised here. There, a subcontractor required to post a performance bond applied to, and purchased, such a bond from an agency who placed the bond with an insolvent surety. The insurance agency’s errors and omissions insurer (Agrippina) was eventually made a party defendant. The error of the insurance agency occurred during the term of the policy issued to them by Agrippina, but claim against Agrippina was not made until some twenty-six months after expiration. The Agrippina policy also contained provisions which limited coverage to claims made during the policy period.
The issue there, as here, was whether the policy which contained provisions providing coverage for an error or omission committed during the policy period and which was unreported until after the effective expiration date of the policy should be construed in favor of the insured. We found that such a policy was of the type characterized as a “discovery policy” as opposed to an “occurrence policy”. There we made this distinction:
“The former is one wherein coverage is effective if the negligent or omitted act is discovered and brought to the attention of the insurer within the policy period. The latter is a policy in which the coverage is effective if the negligent or omitted act occurs within the policy period, regardless of the date of discovery. Samuel N. Zarpas, Inc. v. Daniel J. Morrow et al., D.C., 215 F.Supp. 887. See also Taylor Contracting & Supply Company v. American Mutual Liability Insurance Company, La.App., 163 So.2d 450.”
In view of the terms of Continental’s policy, supra, it is clear that that contract of insurance must also be characterized as a “discovery policy”. Its clearly stated terms are as integral a part of this contract as any of the other provisions stated therein. As succinctly stated by the author of Brown, supra:
. the rule of strict construction does not authorize perversion of language or the creation of ambiguity where none exists. Neither does it authorize the courts to make a new contract where the language employed clearly expresses the intent of the contracting parties.”
No citation of authority is required in support of the principal that summary judgments will not be maintained where there exists any genuine issue as to material fact. LSA C.C.P. Article 966. In view of our ruling in Brown, supra, claims reported after the policy date in contracts of the type litigated there and here are uninsured. Barring renewal or extension of the policy, therefore, there is no issue of material fact which would deter summary judgment in this case. LSA C.C.P. Article 967 provides, in pertinent part:
“Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
“When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
“If it appears from the affidavits of a party opposing the motion that for reasons stated he cannot present by affi *360 davit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just. . . .”
The appellee has supported its motion for summary judgment extensively. The appellant has offered nothing to refute those documents. Viewed collectively, the appellees documentation in support of its motion leaves no doubt whatsoever but that the policy was allowed to expire by Kerstens despite repeated warnings that such would transpire. Indeed, Kerstens so indicated in his deposition. No issue of material fact remains; the mere possibility that an opponent could raise a factual issue does not defeat a summary judgment, if the opponent does not in fact do so. Welsh Southern Oil Co. v. Scurlock Oil Co., 201 So.2d 376 (La.App. 3rd Cir.1967).
In support of its argument that such clauses are against the public policy of this state, the appellant has hypothetically suggested that great injustice would be worked an insured where a loss occurred at a time just before the expiration of a policy which simply could not be reported in time to assure coverage; for instance, in the minutes or hours immediately preceding coverage expiration. We are not confronted with those factual circumstances here and we will rule upon it if and when such a question is presented. However, we do find here that the insured was made fully aware, by his own admission, of the provisions of this policy and that he was adequately warned of its termination as that date approached.
For the aforementioned reasons, the judgment of the court below is affirmed and the motion for summary judgment is granted on behalf of Continental Casualty Company. All costs of this appeal to be paid by appellant.
Affirmed.