The Honorable Joseph D. Hawkins Commissioner of Insurance State Board of Insurance 1110 San Jacinto Austin, Texas 78786
Re: Medical liability insurance underwritten by the joint underwriting association.
Dear Commissioner Hawkins:
You have requested our opinion in connection with several provisions of the Texas Medical Liability Insurance Underwriting Association Act (herein referred to as `the Act'), article 21.49-3 of the Insurance Code. That legislation created a joint underwriting association, consisting of all insurers authorized to write liability insurance in Texas, to provide medical liability insurance to certain health service providers in this State.
Your first question relates to the authorization of section 3(b)(1) of the Act for the joint underwriting association to issue policies of insurance including `incidental coverage.' You advise us that the State Board of Insurance has construed this provision to authorize those coverages which are usual and customary and incidentally furnished in connection with medical liability coverages, including comprehensive general liability, owners', landlords' and tenants' liability, manufacturers' and contractors' liability, owners' and contractors' protective liability, products liability, and several other forms of liability insurance. You inquire whether these coverages are appropriately insured against as `incidental coverages,' within the scope of section 3(b)(1).
The term `incidental coverages' is not defined in the Act, and should be given its `ordinary signification' unless it is a term of art with special meaning in the insurance industry. Code Construction Act, V.T.C.S. art. 5429b-2, § 2.01. In determining the meaning of a doubtful or ambiguous provision, `the construction placed upon a statutory provision by the agency charged with its administration is entitled to weight.' Ex parte Roloff, 510 S.W.2d 913, 915 (Tex.Sup. 1974). In view of your statement that the State Board of Insurance has found the incidental coverages approved to be `usual and customary and incidentally furnished in connection with medical liability coverages,' we perceive no reason to doubt that they come within the scope of incidental coverages authorized by section 3(b)(1) of the Act.
Your next three questions relate to the requirement of the Act that no individual or organization may be insured by the joint underwriting association for an amount exceeding $300,000. Section 3(b)(1) of the Act authorizes the association to issue, or to cause to be issued, policies of insurance to applicants, including incidental coverages and subject to limits as specified in the plan of operation; provided that no individual or organization may be insured by policies issued by the association for an amount exceeding $300,000.
You state that the policy form approved for use by the association provides in paragraph 13 as follows:
 Combined Aggregate Limits — All Coverages. The company's total limit of liability for all coverages afforded under this policy during the policy period shall not exceed the amount specified under `combined aggregate limit — all coverages' as shown in the declarations.
 The declaration page provides for limits of liability for each occurrence of $300,000, and an aggregate limit on all coverage under the policy also of $300,000.
The ambiguity in section 3(b)(1) of the Act arises from the fact that a policy of liability insurance frequently contains two distinct limitations on liability — an `occurrence' limit and an `aggregate' policy limit. Thus, for example, the malpractice policies carried by many physicians at the time article 21.49-3 was enacted contained limits of $200,000 per occurrence, with a maximum total liability under the policy of $600,000. Texas Medical Ass'n, The Medical Malpractice Insurance Crisis in Texas — Professional Liability Insurance Survey (1975). Section 3(b)(1) of the Act does not specify whether the $300,000 limitation on policies issued by the association is to be an `occurrence' or an `aggregate' limit. The legislative history of article 21.49-3 (Senate Bill No. 491, 64th Leg.) offers no assistance in ascertaining the intention of the Legislature in this regard.
The Act does, however, authorize the State Board of Insurance to promulgate a plan of operation for the `economic, fair, and nondiscriminatory administration' of the joint underwriting association, including `procedures for determining amounts of insurance to be provided by the association.' V.T.C.S. art. 21.49-3, § 3(c)(2). The Plan of Operation adopted by the Board of Insurance directs that, `All policies shall be written on the `occurrence' basis. . . .' Texas Medical Liability Insurance Underwriting Ass'n, Plan of Operation, part 4, art. I, § 2 (1975).
This language arguably could refer to the policy limit and thus permit policies to be written for $300,000 per occurrence with no aggregate limits; however, we believe the Plan's reference to `occurrence' policies refers to the time of liability. The term, `occurrence policy,' is a term of art in the insurance business and refers to a policy which covers acts and omissions which occurred during the policy period as opposed to acts discovered during the policy period. See Samuel N. Zarpas, Inc. v. Morrow, 215 F. Supp. 887, 888 (D.N.J. 1963); J. M. Brown Construction Co. v. D M Mechanical Contractors, Inc.,222 So.2d 93, 95 (La.App. 1969). It is likely the Plan's requirement that policies issued by the joint underwriting association be of the `occurrence' type refers to this usage since the reference is found in the portion of the Plan relating to duration of the policy, rather than the portion relating to limitation of liability and since it is consistent with the type of insurance carried by 95 percent of Texas physicians. Texas Medical Ass'n, The Medical Malpractice Insurance Crisis in Texas — Professional Liability Insurance Survey, (1975) at 13.
The Board's approval of a policy form indicating that the aggregate policy limit of coverage is $300,000 per year indicates that it has construed the section 3(b)(1) limitation to refer to an aggregate liability, and we believe the Board's decision represents a correct interpretation of the statute.
You also ask if the Act limits to $300,000 the protection which may be afforded by the joint underwriting association under the category of `incidental coverages.' Section 3(b)(1) requires that no individual or organization may be insured by policies issued by the association for an amount exceeding $300,000. We believe section 3(b)(1) limits the liability of the association to $300,000 on all covered claims, regardless of the denomination of those claims.
Finally, you ask whether the State Board of Insurance may permit the association to consider that premiums have been fully earned when a claim or claims have been paid aggregating the limits of the policy, or when a reserve has been established aggregating the limits of the policy. The Board may, through its plan of operation, establish such procedures as are `economic, fair and nondiscriminatory.' V.T.C.S. art. 2149-3, § 3(c)(2). The Board certainly may prescribe procedures governing the determination of when a premium is `earned' for accounting purposes, and when the joint underwriting association is acquitted of further liability under the policy. These matters should be addressed by the Board in the Plan of Operation in conjunction with a specification of the aggregate limits of liability which apply to policies issued by the joint underwriting association.
 SUMMARY
The Texas Medical Liability Insurance Underwriting Association Act, article 21.49-3, V.T.C.S., authorizes the State Board of Insurance to approve policies insuring against `incidental coverages' which are usual and customary in connection with medical liability coverages. The $300,000 policy limit found in section 3(b)(1) of the Act is an aggregate limitation. The $300,000 limit on liability applies to all claims arising from occurrences during the policy period, including claims under the policy's incidental coverages. The Board of Insurance is authorized to prescribe economic, fair and nondiscriminatory procedures governing the determination of when a premium is `earned' for accounting purposes and when the joint underwriting association is acquitted of further liability under the policy.
Very truly yours,
John L. Hill Attorney General of Texas
Approved:
David M. Kendall First Assistant
C. Robert Heath Chairman Opinion Committee