

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

January 14, 1977

The Honorable Joseph D. Hawkins        Opinion No. H- 924
Commissioner of Insurance
State Board of Insurance               Re: Medical liability
1110 San Jacinto                       insurance underwritten
Austin, Texas   78786                  by the joint underwriting
                                       association.

Dear Commissioner Hawkins:

You have requested our opinion in connection with several
provisions of the Texas Medical Liability Insurance Under-
writing Association Act (herein referred to as "the Act"),
article 21.49-3 of the Insurance Code.  That legislation
created a joint underwriting association, consisting of all
insurers authorized to write liability insurance in Texas,
to provide medical liability insurance to certain health
service providers in this State.

Your first question relates to the authorization of
section 3(b)(1) of the Act for the joint underwriting associa-
tion to issue policies of insurance including "incidental
coverages."  You advise us that the State Board of Insurance
has construed this provision to authorize those coverages
which are usual and customary and incidentally furnished in
connection with medical liability coverages, including
comprehensive general liability, owners', landlords' and
tenants' liability, manufacturers' and contractors' liability,
owners' and contractors' protective liability, products
liability, and several other forms of liability insurance.
You inquire whether these coverages are appropriately insured
against as "incidental coverages," within the scope of section
3(b)(1).

The term "incidental coverages" is not defined in the
Act, and should be given its "ordinary signification" unless
it is a term of art with special meaning in the insurance
industry.  Code Construction Act, V.T.C.S. art. 5429b-2,
§ 2.01.   In determining the meaning of a doubtful or ambiguous

provision, "the construction placed upon a statutory pro-
vision by the agency charged with its administration is
entitled to weight." Ex parte Roloff, 510 S.W.2d 913, 915
(Tex. Sup. 1974). In view of your statement that the State
Board of Insurance has found the incidental coverages approved
to be "usual and customary and incidentally furnished in
connection with medical liability coverages," we perceive no
reason to doubt that they come within the scope of incidental
coverages authorized by section 3(b)(1) of the Act.

Your next three questions relate to the requirement of
the Act that no individual or organization may be insured by
the joint underwriting association for an amount exceeding
$300,000. Section 3(b)(1) of the Act authorizes the association

> to issue, or to cause to be issued, policies
> of insurance to applicants, including
> incidental coverages and subject to limits
> as specified in the plan of operation;
> provided that no individual or organization
> may be insured by policies issued by the
> association for an amount exceeding $300,000.

You state that the policy form approved for use by the
association provides in paragraph 13 as follows:

> Combined Aggregate Limits -- All Coverages.
> The company's total limit of liability for
> all coverages afforded under this policy
> during the policy period shall not exceed
> the amount specified under 'combined
> aggregate limit -- all coverages' as shown
> in the declarations.

The declaration page provides for limits of liability for each
occurrence of $300,000, and an aggregate limit on all coverage
under the policy also of $300,000.

The ambiguity in section 3(b)(1) of the Act arises from
the fact that a policy of liability insurance frequently contains
two distinct limitations on liability -- an "occurrence"
limit and an "aggregate" policy limit. Thus, for example,
the malpractice policies carried by many physicians at the
time article 21.49-3 was enacted contained limits of $200,000
per occurrence, with a maximum total liability under the

policy of $600,000.  Texas Medical Ass'n, The Medical
Malpractice Insurance Crisis in Texas -- Professional
Liability Insurance Survey (1975).  Section 3(b)(1) of the
Act does not specify whether the $300,000 limitation on
policies issued by the association is to be an "occurrence"
or an "aggregate" limit.  The legislative history of article
21.49-3 (Senate Bill No. 491, 64th Leg.) offers no assistance
in ascertaining the intention of the Legislature in this
regard.

The Act does, however, authorize the State Board of
Insurance to promulgate a plan of operation for the "economic,
fair, and nondiscriminatory administration" of the joint
underwriting association, including "procedures for determining
amounts of insurance to be provided by the association."
V.T.C.S. art. 21.49-3, § 3(c)(2).  The Plan of Operation
adopted by the Board of Insurance directs that, "All policies
shall be written on the 'occurrence' basis . . . ."  Texas
Medical Liability Insurance Underwriting Ass'n, Plan of
Operation, part 4, art. I, § 2 (1975).

This language arguably could refer to the policy limit
and thus permit policies to be written for $300,000 per
occurrence with no aggregate limits; however, we believe the
Plan's reference to "occurrence" policies refers to the time
of liability.  The term, "occurrence policy," is a term of
art in the insurance business and refers to a policy which
covers acts and omissions which occurred during the policy
period as opposed to acts discovered during the policy period.
See Samuel N. Zarpas, Inc. v. Morrow, 215 F. Supp. 887, 888 (D.
N.J. 1963); J. M. Brown Construction Co. v. D & M Mechanical
Contractors, Inc., 222 So.2d 93, 95 (La. App. 1969).  It is
likely the Plan's requirement that policies issued by the
joint underwriting association be of the "occurrence" type
refers to this usage since the reference is found in the
portion of the Plan relating to duration of the policy,
rather than the portion relating to limitation of liability
and since it is consistent with the type of insurance carried
by 95 percent of Texas physicians.  Texas Medical Ass'n,
The Medical Malpractice Insurance Crisis in Texas -- Professional
Liability Insurance Survey, (1975) at 13.

The Board's approval of a policy form indicating that
the aggregate policy limit of coverage is $300,000 per year
indicates that it has construed the section 3(b)(1) limitation
to refer to an aggregate liability, and we believe the Board's
decision represents a correct interpretation of the statute.

You also ask if the Act limits to $300,000 the protection which may be afforded by the joint underwriting association under the category of "incidental coverages." Section 3(b)(1) requires that no individual or organization may be insured by policies issued by the association for an amount exceeding $300,000. We believe section 3(b)(1) limits the liability of the association to $300,000 on all covered claims, regardless of the denomination of those claims.

Finally, you ask whether the State Board of Insurance may permit the association to consider that premiums have been fully earned when a claim or claims have been paid aggregating the limits of the policy, or when a reserve has been established aggregating the limits of the policy. The Board may, through its plan of operation, establish such procedures as are "economic, fair and nondiscriminatory." V.T.C.S. art. 2149-3, § 3(c)(2). The Board certainly may prescribe procedures governing the determination of when a premium is "earned" for accounting purposes, and when the joint underwriting association is acquitted of further liability under the policy. These matters should be addressed by the Board in the Plan of Operation in conjunction with a specification of the aggregate limits of liability which apply to policies issued by the joint underwriting association.

### S U M M A R Y

The Texas Medical Liability Insurance Under-writing Association Act, article 21.49-3, V.T.C.S., authorizes the State Board of Insurance to approve policies insuring against "incidental coverages" which are usual and customary in connection with medical liability coverages. The $300,000 policy limit found in section 3(b)(1) of the Act is an aggregate limitation. The $300,000 limit on liability applies to all claims arising from occurrences during the policy period, including claims under the policy's incidental coverages. The Board of Insurance is authorized to prescribe economic, fair and nondiscriminatory

procedures governing the determination of
when a premium is "earned" for accounting
purposes and when the joint underwriting
association is acquitted of further liability
under the policy.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb