103 N.J. Super. 406 (1968)
247 A.2d 370
DONALD ROTWEIN AND EDWARD BLAKE, t/a D.S. ROTWEIN, EDWARD BLAKE, ASSOCIATED ARCHITECTS, PLAINTIFFS,
v.
THE GENERAL ACCIDENT GROUP AND CONTINENTAL CASUALTY COMPANY, INSURANCE COMPANIES AUTHORIZED TO DO BUSINESS IN THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided October 31, 1968.
*410 Mr. Steven S. Radin, for plaintiffs (Messrs Cummis, Kent & Radin, attorneys).
Mr. William Rossmoore, for defendant Continental casualty Company (Messrs. Stavis, Richardson, Koenigsberg & Rossmoore, attorneys).
Mr. John J. Gaffey, for defendant General Accident Group (Messrs. Gaffey, Webb & McDermott, attorneys).
HANDLER, J.S.C.
This is an action for declaratory judgment brought by Donald Rotwein and Edward Blake, t/a D.S. Rotwein, Edward Blake, Associated Architects, against two insurance companies, The General Accident Group and Continental Casualty Company, each authorized to do business in the State of New Jersey. By their complaint plaintiffs, who are professional architects licensed in the State of New Jersey, seek an adjudication that either or both of defendant insurance companies are obligated to defend an action brought against them in the United States District Court for the District of New Jersey charging negligent performance of architectural services and to pay any adverse judgment which may result from that action.
*411 By their answers defendants do not deny most of the essential allegations of the complaint with respect to the issuance of insurance policies in favor of plaintiffs, the rendering of architectural services by plaintiffs, and the filing and pendency of the Federal District Court action alleging negligent acts, errors or omissions. Each alleges, however, that under its respective policy of insurance it is not obliged either to defend that action or to pay any judgment adverse to plaintiffs.
By motions and cross-motions for summary judgment all of the parties seek a judgment vindicating their respective contentions.

I. THE GENERAL ACCIDENT GROUP
With respect to the controversy involving The General Accident Group (hereinafter referred to as "General Accident"), the pleadings and affidavits disclose no genuine controversy as to any material fact. General Accident issued a policy of insurance known as an Architects Professional Liability Policy in favor of plaintiffs as its insured covering a period from April 15, 1961 through April 14, 1964. In July 1966, at which time plaintiffs no longer had an insurance policy with General Accident, plaintiffs were named as defendants in a complaint filed in the Federal District Court alleging negligence on their part in the performance of architectural services in April 1963. The alleged negligence related solely to the drawing and preparation of plans and specifications submitted to a general contractor for the construction of an industrial building in New York. After the submission of these plans and specifications plaintiffs had no further connection with that project; they performed no other architectural services and had no responsibility for any continuing supervision or inspection of the construction work or the completed job. Defects in the work materials came to the attention of the parties directly involved in the New York construction project as early as 1964, but plaintiffs had no knowledge of any defects and were not notified thereof at that time. The first notice of the defects was *412 received by plaintiffs when they were served with a copy of the complaint charging them with negligence in July 1966. They immediately notified General Accident of this complaint and General Accident disclaimed any responsibility to either defend that action or to pay any adverse judgment.
Paragraph IV under "Insuring Agreements" of the General Accident policy provided:
"Policy Period, Territory. This policy applies only to negligent acts, errors or omissions from services rendered during the policy period and then only if such cause an accident during the policy period, and further provided claim, suit or other action arising therefrom is reported during the policy period and is commenced in the United States of America. * * *"
General Accident argues that under the clear terms of this provision it is not obligated to provide insurance for plaintiffs. General Accident's position is that this provision of its policy posits three conditions of insurability which must be met within the policy period: (1) the occurrence of negligent acts, errors or omissions; (2) an accident caused by such negligent acts, errors or omissions, and (3) the reporting and commencement of a claim, suit or other action arising therefrom. While the allegedly negligent acts in the form of architectural services occurred, if at all, during the policy period, namely in 1963, no claim, suit or other action arising therefrom was reported or commenced during the policy period.
Plaintiff's urge that a strict construction of the operative provision would render the policy invalid. They contend that the language of paragraph IV of the "Insuring Agreements", taken in conjunction with other provisions of the policy, reveals an ambiguity or uncertainty as to whether a claim arising from negligence during the policy period must be made during the policy period. Plaintiffs ask that this ambiguity be resolved in their favor, and more specifically that they not be bound by the condition in paragraph IV that a claim must be brought or reported within the policy period.
*413 Plaintiffs emphasize that under paragraph 4 of the "Conditions" of the policy the limit of liability of the insurer is specifically defined without any reference to when a claim must be made, viz.:
"The limit of liability stated in the declarations is the limit of the Company's liability for all damages arising out of negligent acts, errors or omissions occurring during the policy period."
Plaintiffs also stress that such a requirement is absent from paragraph 3 of the "Conditions" which provides:
"If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative."
Furthermore, it is pointed out that under the "Exclusions" of the policy there is no requirement that a claim arising out of negligent acts, errors or omissions be reported or brought within the policy period. Plaintiffs argue that these provisions generate uncertainty as to when a claim must be brought and that paragraph IV of the "Insuring Agreements," read fairly in context, requires only that there be an "occurrence" of the negligent acts, errors or omissions within the policy period, without regard to when a claim might be reported or brought.
It is a cardinal principle of judicial construction of insurance contracts that all doubts arising from ambiguous language or terms of uncertain meaning or import will be resolved in favor of the insured. Allen v. Metropolitan Life Ins. Co., 44 N.J. 294 (1965); Parnell v. Rohrer Chevrolet Co., 95 N.J. Super. 471 (App. Div. 1967); Capece v. Allstate Ins. Co., 88 N.J. Super. 535 (Law Div. 1965). It is equally well established that courts will not engage in creating ambiguity where none exists in order to apply such a rule of construction. The courts are bound to enforce a policy as written when unambiguous terms are used. Linden Motor Freight Co., Inc. v. Travelers Ins. Co., 40 N.J. 511 *414 (1963); Kook v. American Sur. Co. of N.Y., 88 N.J. Super. 43 (App. Div. 1965); Cox v. Santoro, 94 N.J. Super. 319 (Law Div. 1967).
"The language [of a policy] should be revealing to the ordinary man." Merchants Ind. Corp. v. Eggleston, 37 N.J. 114, 122 (1962). It follows as a cognate rule of construction that a party's "reasonable expectations" will not be defeated by "hidden pitfalls," Linden Motor Freight Co., Inc. v. Travelers Ins. Co., supra; Gerhardt v. Continental Ins. Cos., 48 N.J. 291 (1966), or by "technical encumbrances" which nullify substantially the protection purchased by the insured. Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475 (1961); Hoboken Camera Ctr., Inc. v. Hartford Acc. & Ind. Co., 93 N.J. Super. 484 (App. Div. 1967).
In construing the policy here in question and applying its language, paragraph IV of the "Insuring Agreements" defines the ambit of coverage in clear and unmistakable language. As defined therein an insured could reasonably expect to be protected only as to negligent acts, errors or omissions in the performance of architectural services, where an accident arises therefrom, and a claim or suit is reported and instituted; and each of these incidents of coverage must eventuate within the period of the policy.
This clear definition of the extent of coverage is not, as claimed by plaintiffs, rendered uncertain or ambiguous by other provisions of the policy. Paragraph 4 of the "Conditions" refers not to the scope or area of coverage but rather to the insured's "limit of liability," as disclosed by the caption of the paragraph; it means simply that the limit of its liability is stated in the declarations of the policy (i.e., in a particular dollar amount) and is restricted to "liability for all damages arising out of negligent acts, etc. occurring during the policy period." (Emphasis added.) With respect to paragraph 3 of the "Conditions," the language therein deals not with the perimeters of coverage but with the time within which "notice" of a claim or suit must be brought to the attention of the insurer. Similarly, the *415 failure to repeat in some fashion under the "Exclusions" of the policy that a claim arising out of negligent acts, errors or omissions be reported or brought within the policy period does not imply that this requirement, clearly postulated by paragraph IV of the "Insuring Agreements," has been eliminated.
There would be no essential contractual purpose served in achieving either needed clarity or precision by reiterating in these clauses of the policy dealing with liability limits, time of notice and exclusions, those conditions of coverage clearly set forth in paragraph IV of the "Insuring Agreements"  namely, that the negligent acts, the accident or damages resulting therefrom, and any claims arising on account thereof must occur within the policy period. The absence of a repetition of the requirement that all the incidents of coverage occur within the policy period neither generates an ambiguity, nor changes the otherwise plain meaning of the operative paragraph delineating the protected risks.
Plaintiffs' reliance upon Gerhardt v. Continental Ins. Cos., supra, to support their contention that its reasonable expectations were framed from a reading of clauses appearing after the "Insuring Agreements" is misplaced. The court there held that the "reasonable expectations" of an insured predicated upon a fair understanding of the scope of coverage as set forth in prominent and plain language would not be defeated by a "hidden pitfall," i.e., restrictions of coverage buried in other parts of the contract. Gerhardt has been recently explained as standing for the proposition that "an insurance carrier must be clear in its expression of coverage and must not mislead by implying coverage and then later in another part of the policy excluding it with obscure and vague language." Cox v. Santoro, supra, 94 N.J. Super., at p. 323. Here the situation is converse. Plaintiffs claim they reasonably expected more extensive coverage, beyond the clear terms of paragraph IV of the "Insuring Agreements," by virtue of other provisions of the contract. These provisions, *416 however, are not germane to the scope of coverage. In effect, plaintiffs seek the benefit of a "hidden windfall." They are not entitled to this greater coverage since realistically it cannot be said that through a sensible and fair reading of the contract their expectations were reasonably shaped by these inapposite clauses.
Plaintiffs also contend that the provisions of paragraph IV are unenforceable on grounds of public policy. They argue that public policy condemns the provisions of paragraph IV because of their manifest unfairness and because they are inconsistent with the public interest in the freedom of an insured to contract with the insurance company of his choice.
Insurance contracts are necessarily subject to the limitation that they not violate public policy. Jorgenson v. Metropolitan Life Ins. Co., 136 N.J.L. 148 (Sup. Ct. 1947); Kampf v. Franklin Life Ins. Co., 56 N.J. Super. 185 (Ch. Div. 1959); Smith v. Motor Club of America Ins. Co., 54 N.J. Super. 37 (Ch. Div. 1959). Public policy is a test directed toward that which favors or is injurious to the public at large rather than the individual. As stated in Jorgenson v. Metropolitan Life Ins. Co., supra:
"Public policy * * * underlies all judicial action. Stemming from our State and Federal Constitutions, it is also public policy to uphold the freedom of contract, but this court is reluctant to enforce the exercise of that freedom where it tends to result in injury to persons beyond the immediate parties." (136 N.J.L., at p. 153)
Public policy has been traditionally invoked in the insurance context where the terms of the policy might encourage practices clearly against some recognized conception of the public good. Insurance contracts have been declared unenforceable where they are patently offensive or inimical to the public welfare and have a clear capacity to support or encourage conduct which is deleterious, anti-social or unlawful. See generally, 7 Appleman, Insurance Law and Practice, §§ 4242, 4252, 4254 (1942); 29 Am. Jur., Insurance, §§ 229-34 (1960); 44 C.J.S. Insurance §§ 239-243 (1945). It *417 must be emphasized that public policy will usually not be applied to invalidate a contract unless there is some definite basis therefore in law, legal precedent or recognized governmental policy affecting the general welfare. Allen v. Commercial Casualty Ins. Co., 131 N.J.L. 475 (E. & A. 1944).
The argument has been advanced that the General Accident policy, by force of the restrictions of Paragraph IV, violates the public policy favoring freedom of contract. Plaintiffs assert that the type of policy they purchased tied them to General Accident after the expiration of the policy in order to assure adequate protection as to risks occurring during the term of insurance. It would appear, however, that to secure continuing protection against any negligence which may have occurred during the policy period, plaintiffs at the end of the policy term could have either purchased a similar policy with General Accident to extend the period of coverage, or purchased a policy with retroactive coverage with another insurer. They were not locked into a contractual relationship with General Accident. Nothing interfered with their freedom to pursue either alternative. There is nothing to indicate that these options were not available to plaintiffs or that such choices were unreasonable or unduly restrictive of their ability to obtain adequate insurance protection. Moreover, to the extent that plaintiffs' future course of action was influenced by the type of policy they purchased from General Accident, there is no suggestion that their selection of this species of professional liability insurance or their decision to insure with General Accident was anything but freely and intelligently made. In short, there is no demonstration that the type of policy issued to plaintiffs by General Accident has any inherent tendency to limit an insured's freedom to contract.
Plaintiffs further contend that provisions of paragraph IV are unenforceable on grounds of unconscionability. A contract may be considered unenforceable where its terms are manifestly unfair or oppressive and are dictated by a dominant party. Kuzmiak v. Brookchester, 33 N.J. Super. *418 575 (App. Div. 1955). In applying this principle and in judging the fairness of a contract, the court will in addition to inspecting the terms, scrutinize "the relations of the parties and all the surrounding circumstances." Hemhauser v. Hemhauser, 110 N.J. Eq. 77, 79 (Ch. Div. 1932). See Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 404 (1960). Plaintiffs' burden in establishing unconscionability properly requires that they show some over-reaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the terms of the contract that no reasonable man not acting under compulsion or out of necessity would accept them.
Plaintiffs have failed to meet their burden with respect to the issue of unconscionability. The record is barren of any evidence of over-reaching, unfair bargaining or duress on the part of General Accident in the negotiation and execution of the policy. On the contrary, the record suggests that plaintiffs purchased their insurance through their own agent, who presumably possessed the requisite skill to make a reasoned decision as to the proper type of professional liability coverage. And the record does not indicate that the decision to accept this particular General Accident policy was made out of necessity. Rather, the record implies that several types of professional liability coverage were available. This is not a case of an insurer in a dominant bargaining position foisting oppressive policy terms upon another whose status or circumstances compels acceptance.
Plaintiffs state that the General Accident policy is manifestly unfair because it is wholly inconsistent with the kind of protection required by a professional architect, and that literal application of the terms of paragraph IV would therefore be unconscionable. They rely heavily upon the affidavits of Donald Rotwein and Seymour H. Goldberg, a licensed architect, the import of which is that to be effective an architect's insurance protection must span a substantial period of time since his liability exposure is almost indeterminate and it is not unusual that liability claims will *419 arise long after the actual performance of architectural services.
Plaintiffs assert that the oppressive nature of the policy may be inferred from the failure of the General Accident policy to incorporate the benefits of either the "occurrence" or "discovery" type policies while at the same time imposing the restrictions of both, citing Zarpas, Inc. v. Morrow, 215 F. Supp. 887 (D.C.N.J. 1963). The court in Zarpas distinguished between "discovery" and "occurrence" policies. As explained therein, "discovery" policies permit recovery for any errors or omissions (regardless of whether occurring during the policy period) as long as the claim is made during the policy period. "Occurrence" policies, on the other hand, permit recovery for errors or omissions (provided they occur during the policy period) regardless of when the claim is made. It is apparent that both types of policies have as their distinctive features an expanded coverage which protects against liability which may follow long after actual performance of professional services.
While the court in Zarpas approved the "discovery" policy in that case, it did not inferentially disapprove the type of policy issued by General Accident. The court neither expressed any opinion with respect to policies that may be more restrictive than either the "discovery" or "occurrence" policy, nor suggested that such insurance policies, as discussed in that case, were the only policies available or appropriate with respect to protection against professional liability.
Zarpas is not determinative on the question of whether a professional liability policy must include at least as much protection as afforded by either a "discovery" or an "occurrence" policy. More pointedly, it appears that the General Accident policy affords protection substantially comparable to a "discovery" policy. Thus the second portion of paragraph IV of the "Insuring Agreements" provides:
"This policy also applies to any negligent acts, errors or omissions from services rendered during the policy period of any prior policy issued to the Insured, if the Insured has maintained Architect's *420 Professional Liability Insurance continuously in force, provided no claim arising from the same accident has been made during the effective period of the said prior policy and before the inception date of this policy, * * * and provided further that such a claim would have been covered under the said prior policy had it continued in force and also under this policy had it been in effect at the time of the negligent acts, errors or omissions."
Under these provisions of paragraph IV plaintiffs, at the time they became the insureds of General Accident, in fact obtained retroactive protection with respect to any negligent acts, errors or omissions attributable to professional services which may have preceded the issuance of the General Accident policy (provided they had other extant insurance), as long as the claim arising from such negligence was reported during the policy period. It has not been shown that such insurance protection is so inadequate or utterly inappropriate to the reasonable needs of a professional architect that it may be considered oppressive or unfair.
In sum, the provisions of the General Accident insurance policy are plain and unambiguous; they clearly require as a condition of coverage that a claim on account of negligent acts, errors or omissions be brought within the policy period. Plaintiffs have failed to demonstrate that the General Accident insurance policy has any capacity to inhibit or discourage freedom of contract contrary to established notions of public policy, or that the particular provisions of the policy are manifestly unfair, or that these terms were in fact imposed upon plaintiffs, who were disadvantaged through a subservient bargaining position. General Accident is entitled to summary judgment.

II. CONTINENTAL CASUALTY COMPANY
With respect to the claim involving Continental Casualty Company (hereinafter referred to as "Continental"), the pleadings and supporting affidavits have dispelled certain factual disputes. It appears that plaintiffs, after the expiration of the insurance policy issued to them by General *421 Accident, became the insureds of Continental and, from April 15, 1964 to the present time, were covered under successive one-year-term insurance policies issued by Continental. They promptly notified Continental of the Federal District Court suit commenced against them in July 1966, alleging plaintiffs' negligent acts in connection with architectural services rendered in 1963, and Continental disclaimed responsibility to either defend that action or to pay any resulting adverse judgment.
Plaintiffs contend that coverage exists by virtue of the first Continental policy purchased for the year beginning April 15, 1964, which policy period was extended by each successive one-year policy. Plaintiffs assert that this initial policy covered errors and omissions occurring during the period of any prior policy covering architects' errors and omissions. The provisions of the policy upon which plaintiffs rely appear on the face of the policy under paragraph IV of the "Insuring Agreements," viz.:

"Policy Period, Territory

This policy applies only to errors, omissions or acts which occur within the United States of America, its territories or possessions, or Canada during the policy period and then only if claim is first made against the insured during the policy period.
This policy is extended to cover, any loss or losses under any prior policy which shall be discovered after the exploration of the time limited in said prior policy for the discovery of loss thereunder and provided such loss or losses are discovered during the policy period of this policy and before the expiration of the time limited in this policy for the discovery of loss hereunder: Provided that such loss or losses would have been recoverable under said prior policy had it continued in force: and provided further that the errors, omissions or acts causing such loss or losses be such as are covered under this policy.
Nothing herein contained shall be construed to render the Company liable under this policy for a larger amount on account of any loss or losses under said prior policy than would have been recoverable thereunder had it continued in force, or to increase the time for discovering or making claim for, loss under said prior policy beyond what would have been the time, had it continued in force.
The aggregate liability of the Company on account of any loss or losses shall in no event exceed the limit of liability under this *422 policy whether sustained under said prior policy or under this policy or partly under each."
Defendant argues that by a separate document (entitled an "Amendment") attached to that policy, "prior policy" was defined as referring to a prior Continental policy. This amendment reads:

"AMENDMENT OF THE ARCHITECTS' AND/OR ENGINEERS' PROFESSIONAL LIABILITY POLICY FORM A
The first two paragraphs of Insuring Agreement IV, `Policy Period, Territory,' in the policy are replaced in their entirety by the following:
(a) During the Policy Period

The insurance afforded by this policy applies to errors, omissions or acts which occur within the United States of America, its territories or possessions, or Canada during this policy period if claim therefor is first made against the insured during this policy period.
(b) Prior to the Policy Period

The insurance afforded by this policy also applies to errors, omissions or acts which occur within the United States of America, its territories or possessions, or Canada prior to the effective date of this policy if claim therefor is first made against the insured during this policy period and if all of the following requirements are also present:
(1) the error, omission or act was also insured by this Company under the prior policy except that the period for making a claim against the insured under the prior policy has expired and
(2) no insured, at the effective date of the prior policy, had any knowledge of a pending claim against any insured, had any knowledge of any claim which might be made against any insured or had any knowledge of any circumstance which may reasonably be expected to create a claim against any insured.
`Prior policy' means the combined total of all architects' and engineers' professional liability policies issued to the insured by this company beginning with the first architects' and engineers' professional policy followed continuously by successive architects' and engineers' professional policies, the last of which expired on the effective date of this policy."
Summary judgment may be granted when the movant's proofs show that there is "no genuine issue" as to any material fact. R.R. 4:58-3. Merely because the factual allegations of the movant are not directly controverted does not mean that there is no triable issue of fact. Inferences to *423 be drawn from these facts must be such that fair-minded men ought not to differ about them. Brenner and Co. v. Perl, 72 N.J. Super. 160 (App. Div. 1962). The movant's burden was aptly described in United Advertising Corp. v. Borough of Metuchen, 35 N.J. 193 (1961):
"It is the movant's burden to exclude any reasonable doubt as to the existence of a genuine issue of material fact. All inferences of doubt are drawn in favor of the opponent of the motion." (at p. 196)
The movant's burden is essentially a twofold one. He must show by his proofs that there are no genuine issues of material fact, and that there is no issue of credibility related to the proofs. It has been stated:
"In discharging this burden he must show that taking his moving papers as true they establish the lack of such a triable issue of fact; and that they are true. In reference to both of these matters, and particularly the latter dealing with credibility, the opposing party's general right of cross-examination is often important." 6 Moore's Federal Practice § 56.15, at p. 2361
Whether Continental's motion for summary judgment should be granted turns on whether there is a "genuine issue" concerning the attachment of the separate writing, entitled "Amendment," to the first Continental policy. Continental's principal proof lies in the affidavits of J.S. Duvall, IV, assistant vice-president of Victor O. Schinnerer & Company, Inc., an agent for Continental. Duvall's affidavit of April 22, 1968 states that from April 15, 1964 to April 15, 1965 Continental insured plaintiffs under an errors and omissions policy which had the amendment attached to it. Duvall's affidavit of June 27, 1968 states that at the time of the issuance of the first policy Schinnerer and Continental dealt with plaintiffs' then insurance agent, C.J. Simons & Co. In connection with the issuance of the first policy Duvall states that two letters were written to C.J. Simons informing Simons that "policy period" referred to policies issued by Continental. These letters stated that "this proposal is for modified *424 Policy Form A which covers claims arising from professional errors or omissions committed during the policy period, if claim is first made during the policy period. When we refer to policy period we are referring to the continued periods of the first policy issued to the insured by Continental and all continuing renewals thereof." It may be noted in this context that the amendment, stated by Duvall to have been attached to plaintiffs' first Continental policy, is captioned "Amendment of Architects' And/Or Engineers' Professional Liability Policy Form A." It has not been made clear whether the reference to a "modified Policy Form A" in the letters to Simons was intended to designate this amendment, although the explanation of the "modified Policy Form A" as set forth in the letters strongly suggests this.
The policy annexed to Duvall's affidavit would appear to be a photostatic copy of an "Architects' And/Or Engineers' Professional Liability Policy" issued to Donald S. Rotwein and Edward Blake. The provisions of the restrictive amendment are not incorporated in the text or body of the contract, and this separate sheet of paper does not bear any signature or countersignature by the insurance company, the insureds or their agents. It merely states in typing "SEE COUNTERSIGNATURE ENDORSEMENT ATTACHED." Plaintiffs apparently are unable to locate or produce their copy of this initial Continental policy. Rotwein states, however, that he did not see this amendment attached to the policy. He also denies that his insurance agent was C.J. Simons Agency. Additionally, Goldberg submitted an affidavit stating that his own Continental policy for the year 1964-1965 did not contain any restrictive amendment. Moreover, subsequent policies issued by Continental incorporated in the text of the policy the language appearing in the separate amendment.
These facts and the inferences which may be drawn from them create genuine doubts and problems of credibility with respect to whether or not the separate amendment was physically attached to the first insurance policy issued by Continental to plaintiffs. That all of the parties *425 seek summary judgment by virtue of their respective motions and cross-motions does not obviate a plenary trial of disputed issues of fact, where such exist; nor do cross-motions constitute a waiver by the litigants to such a trial. Cross-motions for summary judgment, by the great weight of authority, do not justify the court in withdrawing the case from the jury. Asbury Park Press v. City of Asbury Park, 23 N.J. 50 (1956).
The posture of the evidence is such that there should be a full exploration of all material facts pertaining to the physical attachment of the amendment to the Continental policy issued to plaintiffs on April 15, 1964. Neither party is entitled to a summary judgment.