282 So.2d 478 (1973)
LIVINGSTON PARISH SCHOOL BOARD
v.
FIREMAN'S FUND AMERICAN INSURANCE COMPANY et al. J. C. KERSTENS d/b/a J. C. Kerstens & Associates, Third-Party Plaintiff-Appellant-Relator,
v.
CONTINENTAL CASUALTY COMPANY, Third-Party Defendant-Appellee-Respondent.
No. 52667.
Supreme Court of Louisiana.
June 11, 1973.
Rehearing Denied September 24, 1973.
*479 Durrett, Hardin, Hunter, Dameron & Fritchie, Calvin E. Hardin, Jr., L. Michael Cooper, Baton Rouge, for plaintiff-applicant.
Kantrow, Spaht, Weaver & Walter, Carlos G. Spaht, Carey J. Guglielmo, Baton Rouge, for defendant-respondent.
TATE, Justice.
The plaintiff school board sues to recover damages for the collapse of a roof on a building. Among the defendants was Kerstens, a civil engineer, employed in the construction of the building that collapsed. Kerstens filed a third-party demand against Continental Casualty Company, his engineers' professional liability insurer.
The court of appeal affirmed the dismissal of Kerstens' third-party demand against Continental. 263 So.2d 356 (La.App. 1st Cir. 1972). It did so on the ground that (a) the roof-collapse of July 14, 1969, was not covered by Continental's policy, which terminated on July 11, 1969, and (b) that such policy had not been renewed so as to provide coverage for the loss three days later. The dismissal of this third-party demand is the sole ruling before us for review.
*480 We granted certiorari, 262 La. 1085, 265 So.2d 219 (1972), primarily to consider whether a policy clause was void, as against public policy, which denied protection against a loss from conduct covered during the policy year unless, also, formal claim was made during the policy year.

The Policy Coverage
The plaintiff school board sues Kerstens and others for damages caused by the collapse of the roof of a newly constructed building. It collapsed on July 14, 1969 (which was three days after Kerstens' policy coverage with Continental had expired).
The defendant Kerstens was responsible for architectural and engineering design, planning, and supervision of the construction of the building. All of these services had been performed between August 9, 1968 and prior to July 11, 1969.
During that period, Kerstens was insured by an Architects' and/or Engineers' Professional Liability Policy. It was issued by Continental on July 11, 1968 and covered a policy period terminating on July 11, 1969. Continental had insured Kerstens by similar policies continuously renewed commencing July 11, 1966.
The present policy, however, was not renewed on July 11, 1969. This was three days before the building collapsed, due (allegedly) to the negligent performance by Kerstens of his service as architect and engineer for the new construction.
The coverage of Continental's policy extended to payment of all damages based on legal liability arising out of the performance of professional services.[1] However, the insurance afforded by the policy only extended to negligent acts occurring during the policy period "if claim therefor is first made against the insured during this policy period",[2] i. e., between July 11, 1968 and July 11, 1969. (The policy also afforded insurance against negligent acts occurring prior to the policy period of this policy, (a) if occurring during the policy period of a prior policy issued by Continental and *481 (b) if the insured had been continuously insured by successive professional liability policies with Continental since then.[3])

Is Clause against Public Policy which Limits Coverage to Claims "made" during Policy Year?
The insured Kerstens points out that the effect of the policy clauses limiting coverage to claims "made" during the policy period is to deny coverage for negligent acts insured against and committed during the policy year unless (a) the damage manifests itself during the year, (b) claim is made during the year, or (c) the insured renews (and is permitted to renew) this policy continuously year after year with Continental, so as to insure protection against negligence in construction this year which does not manifest itself until several months or years later.
At this point we should note that, under the showing made, the insurer routinely offered to renew the present policy long before its expiration date of July 11th and that, had Kerstens renewed it, he would have been covered by a claim made for the July 14th collapse during the policy year of the successor policy. We will therefore not consider a contention that enforcement of the clause would be against public policy if an insurer had refused to renew coverage or had offered to do so only at exorbitant rates.[4]
The issue before us, then, is limited to whether the clause itself offends public policy as being manifestly unfair or oppressive, and as unreasonably restricting the coverage to claims for policy-covered negligence which are actually made within the year or within policy periods provided by successive and continuously renewed policies with Continental and Continental alone.
The policy at issue is known as a "discovery" policy. In it, the coverage is effective only if the negligent harm is discovered and reported within the policy term; this is to be contrasted with an "occurrence" policy, where the coverage is effective if the negligent harm occurs within the policy period, regardless of the date of discovery. See 7 Appleman, Insurance Law and Practice (Supp.1972), Section 4262.
Where a policy unambiguously and clearly limits coverage to acts discovered and reported during the policy term, such limitation of liability is not per se impermissible. J. M. Brown Const. Co. v. D & M Mechanical Contr., Inc., 222 So.2d 93 (La.App. 1st Cir. 1969); see also Home Ins. Co. v. A. J. Warehouse, Inc., 210 So. 2d 544 (La.App. 4th Cir. 1968), syllabus 6. This is in accordance with the general principle that, in the absence of conflict with statute or public policy, insurers may by unambiguous and clearly noticeable provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract. Snell v. Stein, 261 La. 358, 259 So. 2d 876, 878 (1972), and decisions there cited.
No American decision we could find holds public policy to be offended by discovery and reporting provisions similar to the present. In the decisions cited below, such provisions were uniformly upheld, unless waived.
These decisions include: Cornell, Howland, Hayes and M., Inc. v. Continental Cas. Co., 465 F.2d 22 (C.A. 9, 1972); Lehr v. Professional Underwriters, 296 Mich. 693, 296 N.W. 843 (1941); San Pedro Properties, Inc. v. Sayre & Toso, Inc., 203 Cal.App.2d 750, 21 Cal.Rptr. 844 (Ct.App. *482 1962); Reid v. Dayton Title Co., 278 N.E. 2d 384 (Ohio Mun.Ct.1972); Samuel N. Zarpas, Inc. v. Morrow, 215 F.Supp. 887 (D.C.N. J.1963).
Perhaps the most complete discussion rejecting similar public policy contentions is found in Rotwein v. General Accident Group, 103 N.J.Super. 406, 247 A.2d 370, 376-378 (1968). There, the plaintiff architects were denied coverage for 1963 negligence from their professional liability insurer (General Accident), which had issued a policy providing coverage during 1961-64. The claim arose (1964) during the policy period, but the insured architects did not receive notice of it until a 1966 suit, following which they made a claim against their insurer.
The basis for the denial of recovery were clauses of the insuring agreement coverage (a) to negligent acts occurring during and discovered and reported during the present policy period and (b) to negligence occurring before the policy's effective date when discovered and reported during the present policy period, but only if at the time of occurrence and continuously thereafter such negligence had been covered by a professional liability policy.
The court rejected the contention that the clauses offended public policy (a) by violating the freedom of contract or (b) on the grounds of unconscionability, because of the manifest unfairness of the provisions and the superior bargaining power of the insurer:
(a) The freedom of contract contention is that the policy tied the policyholder into perpetual renewal of coverage with the insurer, in order to obtain adequate and continued protection for risks occurring during the policy year for which he had brought protection. However, the court held that, in an absence of a showing of no options of obtaining reasonable continuing coverage from the same or other insurers, or of a showing that the choices available to the plaintiff were unreasonably restrictive or expensive because of the present insurance contract, the policy did not have any inherent tendency to limit the policyholder's freedom of contract;
(b) The unconscionability argument was rejected, in the absence of a showing of overreaching, unfair bargaining, or duress on the part of the insurer, or of unreasonable limitation of competitive options through a dominant bargaining position.
For similar reasons, we reject the contention that the present clauses are invalid as contrary to public policy. No reasonable expectation of coverage by the insured was defeated by the unambiguous provisions clearly limited coverage to those claims discovered and reported during the policy period.
The policies discussed in the cited decisions illustrate a variety of coverages by which insurance may be secured against professional liability, in addition to the limited "discovery" protection afforded by the present policy.
In Reid, the policy afforded protection for negligent acts discovered during the policy period, no matter when they had been committed. In Rotwein, the policy provided retroactive coverage for pre-policy negligence, providing that a professional liability insurance policy had been maintained with some (any) company at the time and continuously since then. In Cornell, Howland, coverage was afforded because the insurance agent had waived a provision limiting liability with regard to pre-policy negligence. In Lehr, the discovery period extended until two months after the expiration of the policy. Again, for instance, a professional liability policy obligated the insurer to defend suits brought against the engineer during the policy period, even though the negligence had occurred prior to his obtaining insurance from the insurer. Home Ins. Co. v. A. J. Warehouse, Inc., 210 So.2d 544 (La.App. 4th Cir. 1968), syllabus 7.
The variety of coverage obtainable (presumably with premiums calculated in accordance *483 with the amount of protection assured) reinforces our conclusion, whereby we uphold the validity of the present policy provision insofar as it limits coverage to claims discovered and reported during the policy period. If the insured did not wish to renew coverage with Continental under the present policy, he was not, by reason of any provision of the present policy, deprived of a reasonable opportunity to obtain protection from Continental or other insurers by the various other types of coverage available.
In effect, the insured received what he paid for by the present policy, with premiums presumably reduced to reflect the limited coverage. His ability to obtain reasonable protection for the risks created during the present policy's year is not shown to have been unreasonably limited by reason of the present policy so purchased.

Summary Judgment: No Factual Dispute
Before concluding, we should note that the relator Kerstens further argues that, because of a genuine issue as to material fact, summary judgment was improperly granted dismissing his third-party demand. La.C.Civ.P. Art. 966. Kerstens contends that there is a factual issue as to whether his policy expired on July 11th, three days before the roof-collapse. He relies upon the showing that his application for renewal dated July 2nd, was, he argues, accepted by the defendant insurer.
However, the undisputed showing is that Kerstens did not forward this application to the company's agent until July 25th, and that it was never given retroactive acceptance insofar as the present school board claim. There is thus no genuine issue that the policy expired on July 11th and was not renewed insofar as the present claim.
Decree
For the reasons assigned, we affirm the judgments of the previous courts dismissing Kerstens' third-party demand against Continental, at his cost.
Affirmed.
BARHAM, Justice, dissents, being of the opinion that the Continental Casualty Company policy requirement of continuity of coverage with that company in order that plaintiff have complete coverage for loss inhibits unduly the freedom of contract and is therefore contrary to public policy.
NOTES
[1] Part I, Section 1 "Coverage", of the policy provides:

"The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages if legal liability arises out of the performance of professional services for others in the insured's capacity as an architect or an engineer and if such legal liability is caused by an error, omission or negligent act."
[2] See Section IV, Clause (a), quoted below.

Under Part I, Section IV, captioned "Policy Period, Territory", the contract includes these terms (Italics supplied):
"(a) During the Policy Period
"The insurance afforded by this policy applies to errors, omissions or negligent acts which occur within the United States of America, its territories or possessions, or Canada during this policy period if claim therefor is first made against the insured during this policy period.
"(b) Prior to the policy period
"The insurance afforded by this policy also applies to errors, omissions or negligent acts which occur within the United States of America, its territories or possessions, or Canada prior to the effective date of this policy if claim therefor is first made against the insured during this policy period and if all of the following requirements are present:
(1) the error, omission, or negligent act was also insured by this Company under the prior policy (as defined below) except that the period for making a claim against the insured under the prior policy (as defined below) has expired and
(2) no insured, at the effective date of the prior policy (as defined below), had any knowledge of a pending claim against any insured, had any knowledge of any claim which might be made against any insured or had any knowledge of any circumstnce which may reasonably be expected to create a claim against any insured.
"Prior policy (for the purpose of this insuring agreement) means the combined total of all architects' and/or engineers' professional liability policies issued to the insured by this Company beginning with the first architects' and/or engineers' professional liability policy followed continuously by successive architects' and/or engineers' professional liability policies, the last of which expired on the effective date of this policy."
[3] See Section IV, Clause (b), quoted in Footnote 2 above.
[4] Such an issue might indeed be presented, although not by the facts of this case, if indeed an insurer, once having accepted a premium and agreed to cover professional negligence during the policy year, then attempted to withdraw its implied condition of providing continuous coverage at reasonable rates thereafter for the risk so insured, when discovered.