CENTRAL PROGRESSIVE BANK,
Plaintiff-Appellant,

v.

FIREMAN'S FUND INSURANCE COM-
PANY and Maryland Casualty Compa-
ny, Defendants-Appellees.

No. 80–3812

Summary Calendar.

United States Court of Appeals,
Fifth Circuit.*

Unit A

Oct. 7, 1981.

---

* Former Fifth Circuit case, Section 9(1) of Public
Law 96–452—October 14, 1980.

L. B. Ponder, Jr., Amite, La., for plaintiff-appellant.

Deutsch, Kerrigan & Stiles, Matt J. Farley, Francis G. Weller, New Orleans, La., for Fireman's Fund Ins. Co.

Stanley E. Loeb, New Orleans, La., for Maryland Cas. Co.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

In this Louisiana diversity action Central Progressive Bank (Bank) sued two insurers on bankers bonds, issued for different periods of time, for a loss sustained from a breach of fidelity by a former president of the Bank, Philip A. Roth, Jr. One defendant, Maryland Casualty Company (Maryland), was dismissed on motion for summary judgment. Trial to a jury on the claim against Fireman's Fund Insurance Company (Fireman's) resulted in a special verdict for Fireman's and judgment was entered dismissing Bank's complaint. The Bank appealed after its motions for j. n. o. v. and for a new trial were denied. We find the Bank's contentions without merit and affirm both as to Maryland and Fireman's.

This civil action arises from an asserted conspiracy to defraud the Bank by which Philip A. Roth, Jr., then President of the Bank, permitted R. L. Booty to collect the proceeds of certain life insurance policies supposedly pledged as collateral for two loans made by the Bank and partially guaranteed by the Small Business Administration (SBA). Booty was indicted on February 15, 1979, and later convicted of conspiracy to defraud the United States Government under 18 U.S.C. § 371. The indictment named Roth in most of the overt acts charged which occurred from about April 28, 1975 through July 30, 1976.[1] Booty's conviction was affirmed in *United States v. Booty*, 621 F.2d 1291, *modified*, 627 F.2d 762 (5th Cir. 1980). The circumstances surrounding the fraudulent activities are well-detailed in that opinion.

The Bank, on April 5, 1979, instituted this civil action against both Maryland and Fireman's to recover a $198,000 loss under simi-

---

1. Roth was indicted for bank fraud and embezzlement February 8, 1978 and as part of a plea bargain subsequently pleaded guilty to two counts.

lar fidelity bonds issued by each company. Each bond, utilizing the standard form bankers blanket bond, provided coverage for losses *discovered* during the policy period.[2] Each bond also provided that coverage was deemed terminated as to any employee as soon as the Insured had knowledge that the employee had committed any fraudulent or dishonest act.[3]

The blanket bond[4] issued by Maryland covered the period from December 15, 1971 to December 15, 1975. The Fireman's bond period was from December 15, 1975 to August 18, 1978.[5]

Within the policy period ending August 18, 1977, the Bank first wrote to Fireman's on August 15, 1977 advising the insurer of a likely claim and requesting an additional period of twelve months within which to discover the loss as provided in the policy. The extension was granted and on November 30, 1977, the Bank actually filed its claim. The District Court granted Maryland's motion for summary judgment,[6] finding that no discovery took place prior to termination of Maryland's bond. The Bank's claim against Fireman's proceeded to trial.[7]

Fireman's offered several defenses based in part on specific contractual provisions. The case was submitted to the jury by a general charge with special interrogatories (F.R.Civ.P. 49(a)). The jury answered that the Bank had suffered a loss through the dishonest or fraudulent conduct of its employees, but the loss was not within the blanket bond coverage.[8] The District Court entered judgment dismissing the Bank's action. From denial of post-trial motions for j. n. o. v. and new trial, the Bank appeals. It urges error by the District Court in (1) failing to grant its motions for summary

---

2. Each bond contained the following language:
   The Underwriter, in consideration of an agreed premium, and subject to the Declarations made a part hereof, the General Agreements, Conditions and Limitations and other terms of this bond, agrees with the Insured, in accordance with the Insuring Agreement hereof to which an amount of insurance is applicable as set forth in Item 3 of the Declarations and with respect to loss sustained by the Insured at any time *but discovered during the Bond Period*, to indemnify and hold harmless the Insured for: (Italics supplied).

3. Section 11, entitled Termination or Cancellation, in each policy provided the following:
   This bond shall be deemed terminated or canceled as to any Employee—(a) as soon as the Insured shall learn of any dishonest or fraudulent act on the part of such Employee, . . . or (b) fifteen days after the receipt by the Insured of a written notice from the Underwriter of its desire to terminate or cancel this bond as to such Employee.

4. Maryland and Fireman's provided both a primary bankers blanket bond and an Excess Dishonesty Bond, the latter covering virtually the same hazards but having a larger deductible. The Bank's claim does not exceed the amount of the primary bond.

5. The Fireman's bond was to terminate on August 18, 1977 but was extended for one year for discovery of any loss sustained by the insured prior to August 18, 1977. Fireman's and Maryland originally argued that the loss, not "discovered" until March 1979, a date long after both policies lapsed, was not covered. This position was based on the Bank's answers to interrogatories. The Bank subsequently supplemented its interrogatories to show that the loss was discovered in 1977.

6. All parties made motions for summary judgment. The Bank's motion urged that the issue of fraud and dishonesty had been established in the prior criminal trial of Booty; therefore collateral or judicial estoppel would operate to preclude relitigation of any issues. The Bank's motion for summary judgment was denied. Fireman's motion asserted that its bond provided no coverage for the loss which was not discovered during the policy period. The Court denied Fireman's motion, finding there was a question of fact whether the insurance company had received notice of the claim.

7. Fireman's supplemented its answer to raise additional defenses prior to the trial.

8. JURY INTERROGATORIES AND ANSWERS:
   (1) Was there a valid bond policy issued by the Fireman's Fund Insurance Company to Central Progressive Bank? *Yes*
   (2) Has the plaintiff suffered financial loss due to fraudulent or dishonest acts of its employees? *Yes*
   (3) Were these losses covered under the blanket bond policy issued by Fireman's Fund Insurance Company to Central Progressive Bank? *No*
   (4) What were Central Progressive Bank's actual losses? (This question was left unanswered.)

judgment, directed verdict, and j. n. o. v., (2) giving an indefinite and confusing charge to the jury, and (3) permitting a supplemental answer by Fireman's.

### Bank's Claim Against Maryland

■ The Bank's claim that Maryland is liable under the blanket bond is supported neither by the language of the bond nor the law of Louisiana. Maryland's bond expired December 15, 1975. Coverage under the policy is conditioned not upon the date of loss or commission of the act causing the loss, but rather upon the date of "discovery of the loss". The District Court found that there was no report of any loss to Maryland or any discovery prior to termination of its policy. The law of Louisiana clearly approves and enforces the discovery provisions. *Livingston Parish School Board v. Fireman's Fund American Insurance Co.,* 282 So.2d 478 (La.1973);[9] *Breaux v. St. Paul Fire & Marine Insurance Co.,* 326 So.2d 891 (La.Ct.App., 3rd Cir. 1976). The District Court therefore was correct in granting Maryland's motion for summary judgment.

### Bank's Claim Against Fireman's

The Bank asserts several grounds for its appeal from the adverse judgment dismissing its complaint. The standard of review for both motions for directed verdict and j. n. o. v. is clear in this Circuit.

On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied and the case submitted to the jury.

*Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir. 1969). In this case, there was evidence to support the jury's findings.

■ Fireman's primary defense in its supplemental answer at trial was based on the provision of the bond expressly excluding coverage for losses resulting from the dishonest acts of any employee which occurred after the employer had knowledge of the employee's dishonesty.[10] At trial Fireman's presented evidence largely from Roth himself that the Bank, before Roth's actions with Booty, had knowledge or information of prior fraudulent or dishonest activities of Roth. This included evidence of Roth's making fictitious loans to allow use of bank funds for political contributions. The purpose of these political contributions was to gain business for the Bank. These political contributions occurred in early 1975. Although hotly contested, there was evidence from which the jury could infer that the Board of Directors of the Bank had knowledge of and approved these loans. Although the Bank presented testimony of some Directors that they had no knowledge of the political contributions, the jury apparently chose to believe Roth. Credibility

9. Where a policy unambiguously and clearly limits coverage to acts discovered and reported during the policy term, such limitation of liability is not per se impermissible.... This is in accordance with the general principle that, in the absence of conflict with statute or public policy, insurers may by unambiguous and clearly noticeable provisions limit their liability and impose such reasonable conditions as they wish upon the obligations they assume by their contract (citations omitted). 282 So.2d at 481.

10. This type of provision excluding coverage after knowledge has been held valid. *See St. Joe Paper Co. v. Hartford Accident & Indemnity Co.,* 376 F.2d 33, 35 (5th Cir.), *cert. denied,* 389 U.S. 828, 88 S.Ct. 91, 19 L.Ed.2d 86 (1967) (modifying 359 F.2d 579) (relying on *J. S. Fraering, Inc. v. Employers Mutual Liability Insurance Co.,* 242 F.2d 609, 612 (5th Cir. 1957), a case construing Louisiana law); *Verneco, Inc. v. Fidelity & Casualty Co.,* 253 La. 721, 219 So.2d 508, 511 (La.1969).

choices of this type are for the jury. *Boeing Co. v. Shipman*, 411 F.2d at 375. *See Federal Deposit Insurance Co. v. Lott*, 460 F.2d 82, 87 (5th Cir. 1972) (issue of knowledge of directors particularly well suited for jury determination).

Fireman's asserted several other defenses under a rider to the bond limiting the meaning of "dishonest or fraudulent acts" for purposes of fidelity coverage to acts committed by an employee *with the intent to cause the insured to sustain a loss*. Fireman's argued that Roth's conduct with respect to the collateral recovery was not intended to cause the Bank to sustain a loss but rather was designed *to protect* the Bank. Next it claimed that the policy was secured through misrepresentations by the Bank that it was subject to a complete annual audit by an independent CPA. It also asserted that most of the Bank's loss on the loans was reimbursed by the SBA. To the Bank's contention that it should be allowed to recover the SBA's loss, in addition to its own, Fireman's argued that the coverage of the bond did not extend to the SBA's loss but was limited to that sustained by the Bank, the named insured. The District Court severed the claims of the SBA and so instructed the jury. Because of our disposition of this case, we do not reach these issues.

This brings us to the only substantial claim of error, the Court's jury charge and the answers to interrogatories (see note 8, *supra*).

The trouble with this is that the Bank made not a single objection raising any of these claims. Its sole objection to the charge was:

> The Court: Does anybody have any objections?
>
> Bank's Counsel: I have one; interrogatory one, on the question of proof of valid contract. I think the blanket bond policy has been admitted and I think that part is out of the picture. I think there is no

doubt that there is a valid bond. The question of our claim would be covered by those other three.

On appeal, the Bank urges that its right to trial by jury has been denied by refusal to give requested charges, submission of confusing interrogatories, insufficient instructions, and conflicting answers between (2) and (3). The basis for the Bank's attack appears to be its inability to comprehend how the jury could find a loss by dishonest acts without finding coverage.

▮ Rule 49(a) refutes the Bank's position. The focus of much praise,[11] Rule 49(a) allows the trial judge wide latitude in submitting and framing written questions to the jury, *Dreiling v. General Electric Co.*, 511 F.2d 768, 774 (5th Cir. 1975), and appellate review is limited to determining whether there was an abuse of discretion. *Abernathy v. Southern Pacific Co.*, 426 F.2d 512 (5th Cir. 1970). In determining the adequacy of the form of special interrogatories, we consider "(i) whether, when read as a whole and in conjunction with the general charge the interrogatories adequately presented the contested issues to the jury, ... (ii) whether the submission of the issues to the jury was 'fair', ... and (iii) whether the 'ultimate questions of fact' were clearly submitted to the jury." *Dreiling v. General Electric Co.*, 511 F.2d at 774 (citations omitted). To be valid, an objection to an interrogatory or the lack thereof must be made prior to the retiring of the jury, or the objection is waived. If a party fails to request submission of an issue, the court is deemed to have made a finding in accord with the judgment. F.R.Civ.P. 49(a).

▮ The Bank at trial objected specifically to Interrogatory (1) as unnecessary. Assuming this was error, since the jury answered this question in the Bank's favor, there was no injury and no reason to reverse. As to Interrogatory (3), the Bank made no specific objection to it until on motion for new trial and on appeal, thereby

---

11. See cases and authorities cited in *Guidry v. Kem Manufacturing Co.*, 598 F.2d 402, 405–06 (5th Cir.), *petition for rehearing denied*, 604 F.2d 320 (5th Cir. 1979), *cert. denied*, 445 U.S. 929, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980), and more recently *Jones v. Miles*, 656 F.2d 103, at 106 nn.2–4 (5th Cir. 1981).

waiving any objection. In fact, before the jury retired, the Bank indicated that it believed the other three questions covered its claims.[12]

■ Had an adequate objection been made that, as framed, the interrogatory was submitting a question of law, our result likely would have been different. It would have been preferable for the Court to have propounded separate interrogatories inquiring (i) whether Roth committed prior dishonest acts and (ii) if so, did the Bank have knowledge of such acts.

But the only way we can reach that is on plain error. The application of the doctrine of plain error requires an inquiry into whether the action done or not done nominally constituting an error caused any real prejudicial harm. That in turn requires us to look at the whole charge, imperfect though it might be in form.

Here we have no doubts. The judge's general charge made clear to the jury the respective theories of the parties and specifically Fireman's defense that Roth had with knowledge of the Bank committed specific dishonest, fraudulent acts. The charge directed the jury's inquiry to whether the acts had been done, were dishonest, and were known to the Bank. From both the general charge and the structure of the interrogatories,[13] the jury was, in effect, advised that if they credited the Fireman's witnesses, the answer to Interrogatory (3) would be "no"; if the Bank's witnesses were credited, the answer would be "yes".[14]

■ The Bank also contends that the interrogatories are inconsistent because the jury found that the Bank suffered a loss through dishonest acts but such loss was not covered by the bond. This assertion is without merit since these are distinct issues. The jury, in effect, answered that although the Bank's loss was due to dishonest acts, for reasons given in the court's charge, there was no liability under the bond for such losses. Even if the answers were inconsistent on their face, the court must enter judgment if there is an acceptable view of the case which makes the answers consistent. The test of consistency, "is whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted...." *Griffin v. Matherne*, 471 F.2d 911 (5th Cir. 1973). *See Willard v. The John Hayward*, 577 F.2d 1009 (5th Cir. 1978); *Miller v. Royal Netherlands Steamship Co.*, 508 F.2d 1103 (5th Cir. 1975). That test of logic was clearly met in this case.

■ Fireman's primary defense that knowledge of prior fraudulent acts by Roth terminated the coverage as to Roth under the terms of the policy is a valid defense. The instructions to the jury made clear the meaning of Interrogatory (3) to which the Bank offered no valid objection at trial and since the jury found that the policy did not cover the loss, the judgment as to Fireman's was correct.

■ Finally, as a weary tag-end, the Bank urges that the Court erred in allowing

12. The trial court refused each of the Bank's 12 requested charges, no one of which even remotely touched Interrogatory (3). It was not until motion for new trial (par. 4) that objection was made:

  4. That the interrogatory that the jury returned its verdict on, number 3, was actually a question of law, which had been decided by jury under interrogatory 1. Moreover, interrogatory 1 ... should not have been submitted, because the policy was admitted ....

13. Following No. (1) the Court instructed: "If your answer is no, return to the courtroom. If the answer is yes proceed to Question No. 2." The same was repeated following questions 2 and 3. The latter is significant for question 4

asked about dollar damages to which the jury never got.

14. The Court charged:

  To say it in a more simplified way, it is up to you, the jury, to determine whether or not these alleged fraud and/or dishonest acts of one or more of Central Progressive Bank's employees led to an actual loss sustained by the bank. If you find that such action did lead to an actual loss, then you are to determine whether these losses are covered under the policy issued by Fireman's Fund. In determining whether the losses are covered under the policy you must determine if the board of directors knew of and essentially acquiesced in those alleged acts.

Fireman's to file a supplemental pleading setting up additional affirmative defenses, including that of prior dishonest acts. The Motion to Supplement was filed on April 29, 1980, well before the May 15 amendment cutoff date set by the Magistrate in the preliminary pre-trial conference held on April 3, 1980. The Magistrate granted the motion on May 29, 1980. No appeal of this decision was taken to the District Court, and the Bank's objection is not properly before us.[15] *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980), *cert. denied*, 449 U.S. 921, 101 S.Ct. 321, 66 L.Ed.2d 140 (1980).

AFFIRMED.

---

**15.** Even if the objection were properly before this Court, we would not find error in allowing the supplemental answer, given the words of Rule 15(a) of the Federal Rules of Civil Procedure that "leave shall be freely given when justice so requires." *See* 3 Moore's Federal Practice ¶ 15.02[2]. There is no indication in this case of any unfair prejudice sustained by the Bank as a result of the supplemental answer. In contrast, had Fireman's not been allowed to supplement its answer, a valid defense might have been lost.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.